UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TONYA M. CANADY,<br><br>Plaintiff,<br><br>v.<br><br>CITIMORTGAGE, INC. and CITIGROUP, INC.,<br><br>Defendants. | Civil Action No. 22-4971 (RK) (TJB)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants CitiMortgage, Inc. ("CitiMortgage") and Citigroup, Inc. ("Citigroup") (together, "Defendants"), seeking dismissal of *pro se* Plaintiff Tonya M. Canady's ("Plaintiff") Complaint on multiple grounds. (ECF No. 13.) The Court warned Plaintiff that the Motion would be treated as unopposed if Plaintiff failed to respond. (ECF No. 14.) Plaintiff declined to file opposition to the Motion. The Court has considered the Complaint and Defendants' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED** without prejudice.

I. **BACKGROUND**

    A. **THE MORTGAGE AND NOTE** [1]

On April 30, 2013, Plaintiff and Carl A. Newton ("Newton") obtained a mortgage loan from Citibank. N.A. for the purchase of a property located at 109 Crine Road, Morganville, New Jersey, 07751 (the "Property"). (April 30, 2013 Mortgage, Ex. A to Declaration of Gregory E. Reid ("Reid Decl."), ECF No. 13-3.) The mortgage was secured by a $390,900.00 promissory note that charged 4.125% interest on the principal and had a May 1, 2043 maturity date. (April 26, 2013 Promissory Note, Ex. B to Reid Decl., ECF No. 13-4.) The note obligated the borrowers to make monthly payments of $1,894.50 beginning June 1, 2013. (*Id.* at 1.)[2]

On September 18, 2019, CitiMortgage filed a foreclosure action against Plaintiff and Newton for failure to make payments on the note in the Superior Court of New Jersey, Chancery

---

[1] Plaintiff's Complaint in this matter references the April 30, 2013 mortgage Plaintiff obtained to purchase her Morganville, New Jersey property. (Compl. ¶¶ 1, 3.) The Complaint also references the underlying state foreclosure action in the Superior Court of New Jersey, Chancery Division, Monmouth County, Case No. F-015657-19. (*Id.* at *5.)
Although the underlying mortgage documents—the mortgage and its associated promissory note—were not filed with the Complaint, Defendants submitted these mortgage documents in connection with the pending Motion. The Court finds that these documents are "integral to or explicitly relied upon in the complaint" such that the Court may rely on them deciding the Motion without converting it into summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (citation omitted)).
The Court also cites the complaint and orders entered in the underlying state foreclosure action, a related proceeding. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (in deciding a motion to dismiss, a district court is permitted to review matters of public record and take judicial notice of a prior court opinion); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion— not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (citation omitted)).

[2] Defendants note that the mortgage was assigned from Citibank, N.A. to CitiMortgage on November 2, 2016, at which point CitiMortgage became the noteholder and servicer of the mortgage. (November 2, 2016 Assignment of Mortgage, Ex. C to Reid Decl., ECF No. 13-5.) While Plaintiff incorrectly alleges that CitiMortgage was the "original lender" of the mortgage, (Compl. ¶ 3), the identity of the original lender is irrelevant to resolution of the pending Motion.

Division, Monmouth County. (Complaint, *CitiMortgage, Inc. v. Tonya M. Canady, et al.*, No. SWC-F-015657-19 (N.J. Super. Ct. Ch. Div. Sept. 18, 2019), Ex. D to Reid Decl., ECF No. 13-6.) The foreclosure complaint alleged that the mortgagors failed to make installment payments beginning on October 1, 2018 and sought payment in full of the principal and all unpaid interest and other costs. (*Id.* ¶¶ 7–8.) In a Final Judgment entered on October 25, 2021—two years after CitiMortgage initiated the foreclosure action—the New Jersey Court noted that Plaintiff had failed to defend in the action and awarded CitiMortgage $437,762.67, reflecting a principal sum of $396,335.87 along with accrued interest. (Final Judgment, *CitiMortgage, Inc. v. Tonya M. Canady, et al.*, No. SWC-F-015657-19 (N.J. Super. Ct. Ch. Div. Oct. 25, 2021), Ex. E to Reid Decl., ECF No. 13-7.) The Court ordered the Property sold at a sheriff's sale to satisfy the $437,762.67 judgment. (*Id.*)[3]

**B.    THE COMPLAINT**

The Complaint references the underlying mortgage, note, and state court proceedings in passing but primarily relates to events that occurred from May through July 2022, approximately eight months after final judgment was entered in the state foreclosure action. The Complaint alleges that on May 1, 2022, "Plaintiff issued a payment through Notary Presentment to Defendants in the amount of $390,900.00." (Complaint ("Compl.") ¶ 10, ECF No. 1.)[4] On June 1, 2022, CitiMortgage "dishonored the payment submitted through Notary Present." (*Id.* ¶ 11.) On

---

[3] The New Jersey Court has granted Plaintiff's multiple motions to stay and adjourn the sheriff's sale of the Property, most recently on August 22, 2022. (Order to Stay Sheriff's Sale, *CitiMortgage, Inc. v. Tonya M. Canady, et al.*, No. SWC-F-015657-19 (N.J. Super. Ct. Ch. Div. Aug. 22, 2022), Ex. H to Reid Decl., ECF No. 13-10.) Defendants represent that as of the date of their filing, no sheriff's sale of the Property has occurred. (ECF No. 13-1 at 8.)

[4] The Court cites to the paragraphs of the Complaint except in citing to the last two pages of the Complaint, where the allegations are not given in numbered paragraphs. Citations to page numbers of the Complaint are indicated by an asterisk.

July 20, 2022, a notary public, "issued a Notary Protest" and "Certificate of Dishonor" against Defendants. (*Id.* ¶¶ 12–13.)

The Complaint is accompanied by several document exhibits that purport to back up these allegations. One document, dated July 20, 2022, is a "Notice of Dishonor for Non-Acceptance" prepared by a Pennsylvania notary public, Victoria Warren ("Warren"), that represents that Warren mailed several documents to Defendants, including a "NOTICE OF SUBROGATION CLAIM," "COPY MEMORANDUM OF UNDERSTANDING FOR THE TENDER OF PAYMENT," and "NOTICE OF TENDER FOR SETOFF AND NOTICE OF FIDUCIARY APPOINTMENT AND NOTICE OF SETTLEMENT OFFER." (ECF No. 1-2 at 1.) Another document, dated May 10, 2022, is a purported "DEPOSIT RECEIPT" in the amount of $390,900.00 that states it was deposited by Plaintiff for the benefit of "CITIMORTGAGE, INC." with the description "Principal and Interest Accepted as Value with Qualified Endorsement Allonge." (ECF No. 1-3.) The Complaint references this "payment" as a "negotiable instrument," (Compl. ¶¶ 22–23), indicating that Plaintiff sent Defendants a new promise to pay $390,900.

The Notice of Dishonor for Non-Acceptance further states that Defendants "received payment through the notary presentment made on behalf of [Plaintiff]" but "have not returned the payment that was delivered to them." (ECF No. 1-2 at 2.) Defendants did not respond to the documents mailed by Plaintiff's notary. (*Id.*) Therefore, the notary's document concludes, Defendants have "tacitly and expressly agreed through their dishonor that they have received payment and must provide satisfaction of mortgage and release of lien" of the Property and "it is agreed that the mortgage agreement along with the lien filed with the Monmouth County Recorder for New Jersey is null and void." (*Id.*)

The Complaint alleges two Counts. Count One seeks declaratory relief on the theory of "federal subrogation," which it alleges is when "one party takes on the legal rights of another, especially substituting one creditor for another." (Compl. ¶¶ 18–20.) Count Two seeks injunctive relief because the payment Plaintiff sent "through Notary Presentment . . . is considered payment and settlement of the principal and interest of the loan." (*Id.* ¶¶ 21–23.) The Complaint requests that the Court: (1) declare "that [the] negotiable instrument in the amount of $390,900.00 is sufficient payment obtained by Defendants, thereby precluding Defendants from recovering on the lien they have asserted on Plaintiffs' [sic] real property"; (2) "[r]emove [the] mortgage lien on the real property"; and (3) "provide injunctive relief from the ongoing [state court] foreclosure action." (Compl. at *4–5.)

### C. PROCEDURAL HISTORY

*Pro se* Plaintiff filed her Complaint on August 8, 2022. (*See* ECF No. 1.) The same day, Plaintiff filed a "Consent & Registration Form to Receive Documents Electronically," in which she provided her email address and agreed to receive notices of electronic filings in this matter there. (ECF No. 2.) Defendants filed the pending Motion to Dismiss on December 22, 2022, notice of which was sent to the email address Plaintiff provided. (ECF No. 13.) Plaintiff's opposition was due by January 3, 2023. Plaintiff did not file an opposition, and on March 30, 2023, the Court issued a text order warning that "[i]f Plaintiff does not file opposition by 4/13/2023, the motion will be treated as unopposed." (ECF No. 14.) This text order was also sent to Plaintiff's email address. To date, Plaintiff has not filed any opposition to the instant Motion. Therefore, the Court will treat the Motion as unopposed.

## II. LEGAL STANDARD

### A. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. A movant may challenge the Court's subject matter jurisdiction either through a facial or factual attack on the complaint. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). "A facial attack 'concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites.'" *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (citing *CNA*, 535 F.3d at 139). In reviewing a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citation omitted). A defendant's motion to dismiss is considered a facial attack when the plaintiff has not had an opportunity to present competing facts. *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Defendants here assert that they bring a facial challenge to the Court's subject matter jurisdiction. (ECF No. 13-1 at 5.) Therefore, the Court views the Complaint's allegations in the light most favorable to Plaintiff.

### B. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d

Cir. 2011) (citations omitted). A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022) (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002)). Notwithstanding the Court's liberal interpretation, a complaint "may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013).

### III.  DISCUSSION

Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, because Plaintiff's federal case attempts to collaterally attack the judgment in the state foreclosure action, and because Plaintiff was obligated to bring her claims in the state proceeding pursuant to New Jersey's entire controversy doctrine. (ECF No. 13-1 at 6–11.) Defendants also contend that the Complaint must be dismissed because it fails to state a cognizable claim. (*Id.* at 11–14.) The Court addresses both grounds for dismissal.

#### A.  *ROOKER-FELDMAN* DOCTRINE

The *Rooker-Feldman* doctrine precludes federal courts from asserting jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal claim is barred by the *Rooker-Feldman* doctrine when the claim was either "actually litigated in state court prior to the filing of the federal action" or "inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005); *see also In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) ("The *Rooker-Feldman* doctrine is implicated when, 'in order to grant the federal plaintiff the relief sought, the federal court . . . must take action that would render that judgment ineffectual.'" (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996))).

The Third Circuit has repeatedly emphasized the doctrine's "narrowness" and adopted a four-part test that must be met for the doctrine to apply. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 167–68, 169 (3d Cir. 2010). The four requirements are: "(1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state-court judgment." *Phila. Entm't & Dev. Partners, LP v. Dep't of Revenue*, 879 F.3d 492, 500 (3d Cir. 2018) (citing *Great W. Mining & Mineral Co.*, 615 F.3d at 166).

Defendants have demonstrated that all four requirements are present here. *First*, as noted above, the Court takes judicial notice of the final judgment entered in the state foreclosure proceeding, in which the state Court awarded CitiMortgage $437,762.67 and ordered the Property sold at a sheriff's sale to satisfy the judgment. (Final Judgment, *CitiMortgage, Inc. v. Tonya M. Canady, et al.*, No. SWC-F-015657-19 (N.J. Super. Ct. Ch. Div. Oct. 25, 2021), Ex. E to Reid

Decl., ECF No. 13-7.)[5] *Second*, the injuries Plaintiff complains of directly result from the imminent court-ordered foreclosure sale. The fact that the Complaint focuses on actions that occurred after the final state court judgment—namely, that Defendants allegedly did not respond to or accept Plaintiffs' offered "negotiable instrument" in satisfaction of the mortgage and state court judgment—does not change this conclusion. Plaintiff seeks to use this alleged offer to avoid Plaintiff satisfying the state court judgment of $437,762.67 and the court-ordered sheriff's sale. *Third*, the final judgment in the underlying foreclosure proceeding issued on October 25, 2021, over nine months before Plaintiff filed her federal Complaint on August 8, 2022.

*Finally*, the fourth requirement is met because the Complaint directly invites federal review of a final judgment of the state court. Plaintiff frames her claim as one of "federal subrogation" and contends that Defendants "dishonored the payment" Plaintiff offered through documents mailed by her notary. (Compl. ¶¶ 11, 19.) While these claims may facially appear distinct from the mortgage default litigated in the state proceeding, Plaintiff's federal challenge to the state court judgment is plain from her request to "provide injunctive relief from the ongoing [state] foreclosure action" and "preclud[e] Defendants from recovering on the lien" against the Property, (Compl. at *4–5), which Defendants are only permitted to do pursuant to the state final judgment.

It is clear that Plaintiff seeks review and rejection of a New Jersey state court decision regarding foreclosure of the real property at issue. *See Otto v. Wells Fargo Bank, N.A.*, 693 F. App'x 161, 163 (3d Cir. 2017) ("To the extent that [the plaintiff's] complaint can be read to include a request for the District Court to overturn or negate the state court judgment of foreclosure, we agree that the *Rooker-Feldman* doctrine bars the suit."). Because the claim falls

---

[5] The state court judgment is final for *Rooker-Feldman* purposes even though the Property has not yet been sold in satisfaction of the judgment. *See Fraize v. Gov't Nat'l Mortg. Ass'n*, No. 14-7152, 2016 WL 958392, at *4 n.3 (D.N.J. Mar. 14, 2016) ("[A] state court foreclosure judgment, even if steps such as a sheriff's sale remain to be taken, is final for purposes of New Jersey law and *Rooker-Feldman*." (citation omitted)).

under the scope of the *Rooker-Feldman* doctrine, the Court cannot exercise jurisdiction over Plaintiff's claims, and the Complaint must be dismissed.[6]

###   B.   FAILURE TO STATE A CLAIM

Because the Motion is unopposed and the Court finds that the *Rooker-Feldman* doctrine bars its exercise of jurisdiction over the claims, the Court only briefly addresses Defendants' additional argument that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.

The factual allegations in the Complaint are at times murky. Read generously, the Complaint alleges that Plaintiff, through a Pennsylvania notary, mailed Defendants an offer to settle their claims against Plaintiff. Plaintiff mailed Defendants a "negotiable instrument" payable to Defendants for $390,900.00 and an offer that the negotiable instrument would satisfy Plaintiff's obligation under the mortgage and void the lien Defendants held on the Property.[7] Defendants did not respond to the documents Plaintiff mailed them. Therefore, Plaintiff concludes, they have "tacitly and expressly agreed . . . that they have received payment and must provide satisfaction of mortgage and release of lien" of the Property. (ECF No. 1-2 at 2.)

Accepting the Complaints' allegations as true and reading it liberally given Plaintiff's *pro se* status, the Court finds that Plaintiff has offered no facts or viable legal theory that could permit the Court to enter the relief Plaintiff seeks. The Complaint states that Plaintiff seeks relief through

---

[6] Because the Court finds that it lacks subject matter jurisdiction over the dispute pursuant to the *Rooker-Feldman* doctrine, it declines to address Defendants' argument that Plaintiff's claims are precluded by New Jersey's entire controversy doctrine.

[7] A document included with the Complaint states that Defendants "received payment through the notary presentment made on behalf of [Plaintiff]" but "have not returned the payment that was delivered to them." (ECF No. 1-2 at 2.) Given the Complaint's reference to a "negotiable instrument" and the absence of any suggestion that Plaintiff actually deposited $390,000 in an account Defendants could access, the Court construes this sentence to mean that Plaintiff sent Defendants a new promise to pay $390,900. Although irrelevant on this posture, Defendants also represent that they never "received a payment from Plaintiff or anyone else relating to the Mortgaged Property in or around May 2022." (ECF No. 13-1 at 13.)

a theory of "subrogation." (Compl. ¶¶ 18–20.) As Defendants note, subrogation is an insurance concept that "may exist by virtue of an agreement between an insurer and its insured, a right created by statute, or a judicial device of equity to compel the ultimate discharge of an obligation by one who in good conscience ought to pay it." *Am. Fire & Cas. Co. v. Material Handling Supply, Inc.*, No. 06-1545, 2007 WL 1296200, at *2 (D.N.J. Apr. 27, 2007), *aff'd*, 2007 WL 2416434 (D.N.J. Aug. 16, 2007) (citation omitted). Subrogation often arises "when an insurer who has indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss." *Standard Acc. Ins. Co. v. Pellecchia*, 104 A.2d 288, 292 (N.J. 1954). This doctrine is inapplicable here, where there is no contested insurance claim and Plaintiff is not a third-party but rather ~~herself~~ a party to the underlying contract.

New Jersey also recognizes a doctrine of "equitable subrogation" that may apply to mortgages. Under this doctrine, "if a third-party loans or advances funds to pay off an existing mortgage or other encumbrance in the belief that no junior liens encumber the subject premises, and it later appears that intervening liens existed, the new lender will be deemed to be substituted into the position of the prior mortgage holder by equitable assignment of the prior mortgage to give effect to the new lender's expectation and to prevent unjust enrichment of the junior encumbrances." *PrivCap Funding LLC v. Levine*, No. 19-18122, 2022 WL 17093068, at *3 (D.N.J. Nov. 21, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3742839 (D.N.J. May 31, 2023), *as amended*, 2023 WL 6049677 (D.N.J. Sept. 14, 2023). Because Plaintiff is not a third-party but rather the mortgagor, she cannot invoke this equitable doctrine based on her claim that she offered the mortgagee a new promise to pay the principal amount of the mortgage as satisfaction of the original mortgage and resulting state foreclosure judgment.[8]

---

[8] The Complaint cites *Stroh v. O'Hearn*, 142 N.W. 865 (Mich. 1913) in support of the subrogation Count. (Compl. ¶ 20.) It is unclear how *Stroh* could support Plaintiff's claims. The Supreme Court of Michigan

11

There are other issues that would prevent Plaintiff from recovering based on the facts alleged in the Complaint. Plaintiff essentially offered to make a new promise to pay $390,900 to Defendants in exchange for Defendants not enforcing the state foreclosure judgment awarding them $437,762.67 and permitting them to sell the Property at a sheriff's sale. The negotiable instrument Plaintiff offered in May 2022 was less than what she owed under the mortgage. Plaintiff first defaulted on her monthly payments in October 2018. The final judgment entered in the state court proceeding in October 2021 awarded CitiMortgage $437,762.67, reflecting not just the original principal but also interest accrued since the mortgage was issued. The Court finds no authority for the suggestion that Defendants' alleged failure to respond to the offer, even if transmitted via notary, discharges Plaintiff's debts flowing from the mortgage and prevents Defendants from enforcing the final judgment entered by the state Court.[9] Therefore, the relief sought in both Counts of the Complaint—declaratory relief as well as injunctive relief—is unavailable on the facts presented in the Complaint.[10]

---

held that "[s]ubrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another." *Id.* at 869. As noted above, this doctrine is inapplicable to Plaintiff because she is not an unrelated third-party but rather in contract with Defendant.

[9] Indeed, Defendants would have no motivation to accept, nor any confidence in, a new promise to pay $390,900 when Defendant defaulted on the mortgage several years prior and the state Court has already awarded Defendants substantially more money, which they may obtain through selling the property.

[10] Defendants also contend that Citigroup must be dismissed because it is a distinct legal entity from CitiMortgage that was not involved with the mortgage at issue here. (ECF No. 13-1 at 14–15.) Because the Court dismisses the Complaint for lack of subject matter jurisdiction and failure to state a claim, it need not reach this additional argument.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**, (ECF No. 13), and the Complaint is **DISMISSED** without prejudice. An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: November 14, 2023

13